Filed Feb. 22, 1894.

---

No. 16,658.

## McFall et al. *v.* McFall et al.

Deed.—*In Grantee's Possession.—Presumption of Delivery.—Evidence.—Real Estate.*—Where a deed is found in the possession of the grantee, the presumption is that it was delivered on the day of its date, and evidence that the grantor handed the deed to the grantee with the direction to put it away, and that the grantee declared that "he did not expect to have the deed recorded until the old man died," does not in any way rebut the presupmtion, the direction to "put it away" meaning nothing more than that the grantee should take care of the deed as his own.

Same.—*Delivery.—Lasting Improvements.—Evidence.—Real Estate.*—In such case, evidence that after the making of the deeds, and while

in possession, the grantees made lasting and valuable improvements on the real estate, was competent as tending to show the intention of the grantor; that there had been a delivery of the deed in question, and that the title had passed to the grantee.

From the Perry Circuit Court.

*W. Henning*, for appellants.

*W. A. Land*, for appellees.

DAILEY, J.—This is an appeal from a judgment of the Perry Circuit Court, rendered in an action in which the appellees were plaintiffs and the appellants were defendants.

The complaint was in two paragraphs. The first paragraph asserts the ownership in common, of the real estate in question, by the plaintiffs and defendants, and asks for partition of the same.

In the second paragraph, the claim is made that John McFall, the father of the parties to this proceeding, was the owner of said real estate; that he died intestate while seized of the same in fee-simple, and left the plaintiffs and defendants as his only heirs at law.

It is also alleged that on the 25th day of March, 1882, John McFall, being such owner, "made out, signed, and acknowledged two deeds, one to each of said tracts of land, to these defendants, as grantees, but never delivered said deeds, or either of them, to these defendants, or either of them."

Copies of these deeds, so made, are filed as exhibits with this paragraph of the complaint.

The further averment is made that immediately after the death of said John McFall, namely, on the first day of April, 1891, the defendants obtained possession of these deeds, and had the same recorded in the recorder's office of said county.

The prayer of the complaint is that the deeds be set

aside and declared null and void, and that the real estate be partitioned among the parties.

The defendants filed an answer in two paragraphs, and a cross-complaint in one paragraph.

The first paragraph of the answer is in general denial.

The second paragraph avers that the defendants purchased the real estate; that it was conveyed to them at the time of, and by the deeds mentioned in the complaint, and that they made valuable improvements thereon.

The third paragraph, which is the cross-complaint, asks that the title of the defendants be quieted to this land.

The cause was tried by the court without the intervention of a jury.

By the finding and judgment of the court, the deeds, which are claimed in the second paragraph of the complaint to have been "made, signed and acknowledged," but never delivered, are declared null and void, and set aside and held for naught. It is also adjudged and decreed that the plaintiffs' title to the undivided one-half of the real estate in controversy be quieted, and that partition be made among the parties as tenants in common of the same.

A motion for a new trial was filed and overruled.

The only assignment of error discussed by appellants' counsel is, that the court erred in overruling appellants' motion for a new trial.

It is urged that the judgment in this case is not sustained by sufficient evidence; that there was no evidence tending to affect the validity of the deeds, but, on the contrary, the defendants proved by uncontradicted evidence, that they had been properly delivered.

We are inclined to agree with appellants in this contention.

It appears from the record, that this real estate was devised by Hart Humphrey to his daughter, Dorinda T. McFall. After the death of the devisee, viz., on April 14, 1881, her son, the appellee Waldo McFall, and his wife, and devisee's daughter, Lydia B. Little, and her husband, conveyed this real estate to John McFall, who, being the owner by descent from his wife, and by this conveyance from his son and daughter, on the 25th day of March, 1882, made the two deeds in controversy. These deeds, as the complaint shows, were in the possession of appellants at the time of the death of John McFall, and were recorded by them. The only evidence as to what took place at the making of these deeds is the testimony of Q. K. Groves, as follows:

"I wrote both deeds for John McFall, to Hart and Peter McFall, some time ago, and John McFall acknowledged the same before me on the days set forth in said deeds. I was, at that time, a justice of the peace of Tobin township, Perry county, Indiana. I handed the deeds to John McFall, and he gave them to Hart McFall to put them away. Don't know if he said anything about delivering the deeds after he had acknowledged them before me. I handed him the deeds and he gave them to Hart McFall to put them away."

The only other evidence introduced by the plaintiffs, bearing upon this question, is that of James C. Thomas and John Harris. That of said Thomas reads as follows:

"I knew John McFall, the father of the plaintiffs and defendants. John McFall had possession of 100 acres of land when the survey was made, September 15, 1881. I was present when the deed from John McFall to Hart and Peter McFall was made. Asked no questions. I asked Hart McFall about deed. He said he didn't ex-

pect to have it recorded until the old man died. John McFall lived with Hart McFall up to death." "

John Harris testified as follows:

"Know both plaintiffs and defendants. Also knew John McFall in his lifetime. Don't know anything about the conveying of lands or making deeds. Heard Peter McFall say: 'Old man was with Hart McFall, and they run things just to suit them.' "

This is all the evidence which was given on the part of the plaintiffs on the trial, which in any way could be claimed to impeach the deeds in question.

Without reference to the evidence on the part of the defendants, no case was made out for setting aside those deeds, and no evidence was adduced tending to show that they had not been delivered. The deeds having been found in the possession of the defendants, the presumption is not only that they were delivered, but that they were delivered on the day of their date. *Scobey* v. *Walker*, 114. Ind. 254 (257); *Faulkner* v. *Adams*, 126 Ind. 459; *People* v. *Snyder*, 41 N. Y. 397; *Robinson* v. *Wheeler*, 25 N. Y. 252.

"If a deed is found in the grantee's hands, a delivery and acceptance is always presumed." 3 Washburn on Real Estate, 263.

There is nothing in the evidence to rebut this presumption. The deeds were handed over to the defendant Hart McFall, and he was told to put them away. They having been delivered to Hart McFall, who was one of the grantees, the direction to put them away would mean nothing more than that Hart McFall was to take care of them as his own. There was no direction to put them away for the grantor, and, in the absence of such direction, the mere handing to the grantee, with the suggestion to keep them or to take care of them, would imply an absolute delivery. The declaration of Hart McFall, to

which the witness Thomas testifies, that "he did not expect to have the deed recorded until the old man died," does not in any way rebut the presumption of delivery. The recording of the deed was not necessary to pass the title as between the parties, and the title passed as effectively by the delivery of the deed, without recording it, as it would have done had it been entered of record. It was competent for the parties to agree either that the deeds should not be recorded until after the death of the grantor, or that they should not be recorded at all. Such an agreement would not in any way affect the question of the delivery of the deed or the passing of the title. No significance can be given to the testimony that Peter McFall said that the "old man was with Hart McFall, and they run things just to suit them."

There is no charge in the complaint of any fraud or undue influence or coercion on the part of the grantees in obtaining these deeds. There is no explanation of what was meant by the language quoted, and there is no application of it to what took place at the time of executing the deeds, or to anything in connection with the deeds. Under the issues in the case, the testimony is meaningless. If the cause rested entirely upon the evidence introduced by the plaintiffs, the judgment in this case would have to be overthrown.

There is another consideration. The plaintiffs claim title to this land, in their complaint, only as the heirs at law of John McFall. The defendants established, by abundant evidence, which was in no way disputed, the declarations of said decedent, that the deeds in question were not only executed and acknowledged, but were delivered to the grantees, Hart and Peter McFall. This appears from the testimony of five witnesses, namely, John H. and William Perry, George Hyde, Henry Huff, and Q. K. Groves, which we quote, as follows:

John H. Perry says:  "I know all the parties to this. suit, also John McFall.  I lived three miles from him. John McFall told me he had bought out Waldo McFall and Lydia Little.  He also told me he had sold the land to his two sons, Hart and Peter McFall, and had delivered to them the deeds.  He told it to me at the dinner table at my house.  This was long before he died.  He said he aimed, when he died, to leave everything so that there would be no trouble.  I got acquainted with John McFall twelve or fourteen years ago."

On cross-examination, he testifies to two conversations, in the first of which, he states, John McFall said he had sold his land to Hart and Peter; in the second, that he aimed to leave everything in such a way that there would be no trouble after his death.

William Perry says:  "I knew John McFall in his lifetime.  He is now dead.  I heard John McFall say, at the dinner table at my father's house, that he had sold his land to Hart and Peter McFall, and made them a deed for the same, and that he had delivered the deed to Hart McFall.  It is the same land, as I understand it, for which this suit is brought.  I am well acquainted with the land.  Hart McFall lives on the land, and has lived on it for several years.  His father, John McFall, lived with him until he died.  Francis Hart McFall is the son of John McFall, and he is generally known as Hart McFall."

On cross-examination, he testified:  "I am the son of John H. Perry.  Old man McFall took dinner with us when the conversation came up about the land.  It was several years before John McFall died, can't tell how many years, but am sure it was two or three years before he died."

George Hyde testified:  "I knew John McFall in his lifetime.  He is dead.  Heard that he had sold his land,.

and I asked him about it, and he told me that he had sold the land to Hart and Peter McFall, and made them deeds for it, and delivered the deeds to Hart McFall. This was about three, four, or five months before he died.''

On cross-examination, he testified: ''He said the deeds he made and delivered.''

Henry Huff says: ''Six or seven years ago I was buying corn, and John McFall told me that he had deeded his land away to Hart and Peter McFall, and had delivered to them the deeds for the land, and he also stated in that conversation, that he had bought Waldo McFall and Lydia Little out, and Peter McFall cleared said tract and cultivated the same.''

And, on cross-examination, he said: ''I am sure it was six or seven years ago. * * * Hart and Peter McFall were then working and clearing the land. I am not related to defendants that I know of.''

Q. K. Grove, the officer before whom the deeds were acknowledged, says: ''I had a conversation with the old man, John McFall; asked him why he had sold the land to Hart and Peter. He said that he had paid the other two, Waldo McFall and Lydia Little, more than their interest in the land was worth, and that Hart was taking care of him.''

On cross-examination, he testifies: ''I heard a great deal of taking about the sale of the land, after the deed was made, and to satisfy myself I asked the old gentleman about it; and that is the only reason I can give.''

This evidence establishes, beyond peradventure, the fact that John McFall, under whom the plaintiffs claim, not only acknowledged the deeds set out in the complaint, but that he delivered them to the grantees. It further shows that the conveyance of this land was made in pursuance of the sale by John McFall to these two sons, and

that the grantees were in possession, working and clearing the premises prior to the death of the grantor. The proof of these facts leaves the appellees without a basis on which to found a claim of title.

We think all the evidence offered by the defendants to show that after the making of the deeds, and while in possession, they made lasting and valuable improvements on this real estate, was competent, as tending to show the intention of the grantor; that there had been a delivery of the deeds in question, and that the title had passed to the grantees. It will be borne in mind that John McFall, under whom the appellees claim, was living on the premises at the time, and must have known that the appellants were expending money and performing labor in the manner indicated by the question.

The evidence should have been admitted, and its rejection was error.

For the errors appearing in the record, the judgment of the court below is in all things reversed, with directions to the circuit court to grant a new trial.

Filed Feb. 20, 1894.