**WRIGHT v. WRIGHT et al.**

(Circuit Court, D. Connecticut. December 11, 1896.)

DEEDS—PRESUMPTION OF DELIVERY—GRANTEE'S POSSESSION.

The presumption of delivery, arising from the grantee's possession of a deed, and from the probable intention of the grantor that it should have some effect, is not overcome by indefinite evidence, on behalf of the grantor, that it was never delivered; such evidence presenting also inconsistencies with some of the circumstances.

Edmund Zacher and Jason P. Thompson, for complainant.
Wm. L. Bennett and Ernest T. Fellowes, for defendants.

TOWNSEND, District Judge. On January 26, 1886, the complainant, being the owner of a house in the city of New Haven, executed, with her husband, a deed thereof to their three children,—one-fifth to Paul Wright, one-fifth to this defendant, Arthur B. Wright, and three-fifths to Harriet P. Wright, now Harriet P. W. Hewitt, the grantors reserving to themselves the use and improvement of the property during their joint lives and the life of the survivor. On said day, they executed an instrument, declaring that they had conveyed said respective interests to said children, and directing that said interests should not be charged as an advance in the settlement of their (the grantors') estates. Prior to the execution of said instruments by the complainant and her husband, they had advanced to said two sons and to an elder daughter considerable sums of money, and they proposed by this arrangement to make the shares of all as nearly equal as practicable. In July, 1886, Dexter R. Wright died, and this defendant, Arthur B. Wright, was appointed administrator of his estate. On September 21, 1886, said Harriet P. Wright equalized the interests of her brothers in said property, by conveying to each of them two-fifths of her said three-fifths. On January 21, 1892, the defendant Arthur B. Wright conveyed his interest to J. P. Thompson, who, on January 22, 1892, conveyed said interest to this defendant, Harriet S. Wright, wife of said Arthur B. Wright. On September 19, 1892, said Arthur B. Wright caused to be recorded in the town clerk's office said original conveyance to the children, and said deeds to Thompson and to his wife. In April, 1894, the complainant brought this suit, praying for a cancellation of said three deeds, or for a reconveyance of said property to her. The complainant claims that said conveyance was never delivered to said Arthur B. Wright; that she and her husband intended it should not be delivered or recorded until after her decease; and that, when she learned that said deed had been recorded, she consulted counsel, and she thereafter brought this suit for relief. The defendants claim that said deed was duly delivered, and, further, that said defendant Harriet S. Wright is a bona fide purchaser for value, so that, as against her, this complainant is estopped to assert want of delivery. In support of her claim, the complainant and her daughter H. S. Hewitt testify that, immediately after she signed said deed, her husband told her that he would take

care of it, and that she should not be hampered in any way, but could mortgage or sell the property if necessary, and that she neither delivered said deed, nor authorized its delivery to any one of the children. The defendant Arthur B. Wright testifies that he drew the papers for his father; that he was present when they were executed; that, before his mother signed them, his father explained them to her, and said that the old home would continue to be theirs to live in, and that, upon their death, it would go to the children; that, after complainant executed them, she, at her husband's suggestion, delivered them to him (the defendant); and that her husband said it was a family affair, and there was no need of recording them, and told him (the defendant) to keep them. He and his wife and her sister and mother testify that the complainant repeatedly recognized his title under said deed.

As to the material questions dependent upon oral testimony alone, there is such an irreconcilable conflict of testimony between the mother and daughter, on one side, and the son and his wife and mother-in-law, on the other side, that it is impossible to certainly determine the truth. While the testimony on behalf of the defendants is not entirely satisfactory, there are several presumptions raised in their favor which are not overcome. Thus, the fact that the grantee is in possession of the deed raises a presumption that it was delivered to him. Tunison v. Chamblin, 88 Ill. 387; MaGee v. Allison (Iowa) 63 N. W. 322; McFall v. McFall (Ind. Sup.) 36 N. E. 517. The defendants are entitled, also, to the benefit of the presumption that the grantors intended, in making this deed, that it should have some effect; yet, if complainant's claim is correct, the deed did not accomplish any result. The division among the children provided for therein was revocable at any time if they did not propose to make delivery; and if, by withholding the delivery, the conveyance would have no validity or effect until after the death of both of said life tenants, the reservation therein of a life estate to the grantors was a manifest absurdity and useless formality. The recitals in the contemporaneous instrument, that the grantors had, by said deed, conveyed certain definite shares of said property to certain children, were false, and the provision therein "that the respective interests * * * conveyed * * * shall not be charged as an advance" was unnecessary, and practically ineffective. There is also a presumption, arising from the conduct and conversation of complainant and her husband, that they supposed they had conveyed something by this deed. They told their daughter Hattie that this was what they "had done for her, to even up things"; that as they had given her sister nearly $30,000, and they wanted to treat all the children alike, "we have done more for you in giving you three-fifths of the house." When this daughter afterwards reconveyed a portion of her share in this property to her two brothers, the complainant was very much grieved, and remonstrated with her. There was no occasion, on her theory of this case, for such grief or remonstrance, for, if the deed had not been delivered, she had a right to recall the proposed gift, and thus annul Hattie's attempted

transfer. If the deed was not to be delivered, Hattie, in fact, got nothing by the three-fifths stated therein to be given her if the grantor saw fit at any time to change her mind. Finally, the complainant, after having learned that these deeds had been recorded, and that the defendant Arthur B. Wright had made a conveyance to his wife, made no complaint to said Arthur B. Wright, and did not institute this suit until some 16 months after she learned of the transactions complained of. If, as is contended by complainant, this deed was merely intended to operate after her death, such result might have been much better accomplished by a will, without any of the risks attendant upon this kind of a transaction.

Counsel for complainant, confronted by these difficulties, attempted to explain them by the following statement:

"We suggest as a probable truth that Col. Wright did not want to trust the disposition of this property to his wife's will; that he rather wanted her to understand that if she did not dispose of the property during her life (an event which, perhaps, he considered improbable), that she had finally disposed of it by deed. She probably never could have been induced to make this deed, except upon the understanding that she was to have full control and disposal of her property, during her life, and was therefore told that she could dispose of this property at any time during her life, but, if she did not, it was to go according to the terms of this deed. There is nothing unreasonable or improbable in this view of the case, and it states, as it seems to us, what is altogether the real truth of the matter."

To this theory there are several objections. There is no evidence that Col. Wright distrusted his wife, or attempted or proposed to deceive her as to the effect of said deed. It is admitted that he originally owned this property, and deeded it to her absolutely. If she "probably never could have been induced to make this deed except upon the understanding" suggested this fact should have been shown by her testimony. In the absence of such proof, it is incredible that a skilled lawyer would have caused such papers to be executed, which, unless delivered, were false in fact, of doubtful validity in law, and liable to the happening of such contingencies as are herein claimed. If Col. Wright would not trust his wife's disposition by will, why should he have trusted her pretended disposition by an undelivered deed, which might at any time be revoked. Furthermore, the claim of complainant as to the effect of this transaction rests upon a somewhat shadowy and uncertain recollection of alleged conversations. It may well be, after the lapse of 10 years, that the statements now relied upon to show that the deed was not to have been delivered, were merely explanations made by Dexter Wright to his wife that the deed would not hamper or interfere with her life use of the property. It is significant in this connection that much of the testimony of the complainant and of Mrs. Hewitt is consistent with this view, and omits the reference to the power to sell or mortgage. Thus, Mrs. Hewitt says that Dexter Wright said: "Maria, I want you to understand thoroughly that this does not hamper you in the least. The home is yours, and always will be. After your death and my death, if it is intact, it goes to the three children, Hattie, Paul, and Arthur." The complainant, a woman 71 years of age, whose memory is admittedly very poor, and proved to be very treacherous as to several matters, in

testifying as to the conversations with her husband, repeatedly omits the alleged statement that she could sell or mortgage the property. It is undisputed that the instruments in question are in the handwriting of Arthur Wright, this defendant, and that he was the favorite son of this complainant. The testimony as to Dexter Wright's taking the papers home, and showing them to his daughter, is not necessarily inconsistent with the defendant's statement that they were kept by him in his desk, in his father's office. And, finally, the mother and sisters of the defendant Mrs. Arthur Wright, corroborating her evidence and that of her husband, testify to several conversations in which Mrs. Wright asserted that Paul Wright had an existing interest in the property, which was capable of being sold, and suggested that this defendant, Mrs. Arthur Wright, should buy the share in the house of which Paul was the owner. This testimony is further supported by the testimony of Mr. Hinton.

In view of the indefiniteness of complainant's evidence as to the circumstances attending this transaction, the uncontradicted evidence of her and her daughter's acts, indicating their idea that this deed had been operative in creating existing interests in the grantees, and her failure forthwith to object and assert her rights after discovery that defendant had recorded the deed, this court cannot find that this complainant understood and intended that said deed should not be delivered. The utmost that can be presumed from her evidence is that she, admittedly having great confidence in her husband, intrusted to him the preparation and execution of said instruments, and their ultimate disposition in effecting the distribution of said property. Except for the altered relations of the parties and the family disagreements, it would probably have been immaterial whether the deed was or was not delivered. In either event her life estate in the property would have been practically accordant with her unaided recollection of Col. Wright's statements to her. This court, therefore, would not feel justified in setting aside this voluntary family conveyance, upon the consideration of affection, purporting to have been executed with the intent to effect an actual family settlement, and found in the possession of one of the grantees. Souverbye v. Arden, 1 Johns. Ch. 240.

This conclusion renders it unnecessary to consider the claim that the defendant Harriet S. Wright is a bona fide purchaser for value. Let the bill be dismissed.